## LOVELADY v. LOUGHRIDGE.

No. 34267. Feb. 27, 1951.

*228 P. 2d 358.*

Sam H. May, Altus, for plaintiff in error.

L. B. Yates, Altus, for defendant in error.

LUTTRELL, V.C.J. This is an action to quiet title to certain property in the city of Altus, brought by the plaintiff, Maggie Loughridge, against Pearl Lovelady and others. Pearl Lovelady, by answer, denied the averments of plaintiff's petition, and alleged that she was the owner of an undivided one-half interest in said real property for the reason that the same was acquired during her marriage to J. C. Lovelady, plaintiff's grantor, and that although she and Lovelady had thereafter been divorced, the community property had never been divided, and she therefore claimed her interest in the property as community property. The trial court overruled the demurrer of the defendant Pearl Lovelady to plaintiff's evidence, and when said defendant elected to stand on the demurrer, rendered judgment in favor of plaintiff. The defendant Pearl Lovelady appeals.

Defendant's sole contention is that the trial court erred in overruling her demurrer to plaintiff's evidence, for the reason that such evidence was not sufficient to discharge the burden of proof resting upon plaintiff to show that the property involved was not the community property of J. C. Lovelady and the defendant. This requires a brief analysis of the evidence.

From the evidence it appears that J. C. Lovelady and defendant were married September 8, 1945, and divorced October 8, 1946, the divorce decree making no disposition of the property rights of the parties. It further appears that prior to the divorce, and in September, 1946, the parties separated and defendant returned to her home in Edmond, Oklahoma; that at or about the time of the separation articles of separation in writing were entered into between the parties by which they agreed to live apart from each other in the future during their natural lives; agreed that neither party should be responsible for any contract made, or to be made by the other, and that neither should look to or be responsible for the support of the other. The deed transferring the property in question to J. C. Lovelady reciting a consideration of $2,700 was dated October 7, 1946, on which date his petition for divorce from the defendant was filed, and filed for record on October 8, 1946. On October 8, 1946, an entry of appearance and waiver of summons signed by defendant was filed in said cause, and on the same date a default judgment of divorce was granted to Lovelady on the ground of defendant's gross neglect of duty, the judgment reciting that plaintiff, J. C. Lovelady, was then 70 years of age. The deed from J. C. Lovelady to plaintiff was dated July 19, 1948.

Plaintiff introduced in evidence the record of checks and deposits in the bank account of J. C. Lovelady from June 2, 1943, to August 12, 1947. Therefrom it appears that on May 2, 1945, which was prior to his marriage to defendant, J. C. Lovelady had on deposit in said bank the sum of $11,050; that on June 12, 1946, he made an additional deposit of $100, and on September 14, 1946, a deposit of $4,800, and that these were the only deposits made by him between May 2, 1945, and August 12, 1947. The record also shows a check for $900, cashed August 31, 1946, another for $500, cashed September 7, 1946, and another for $2,300, cashed October 10, 1946. It also shows a deposit of $9,950, dated April 20, 1945, which the banker testified came from the sale of a farm.

John Austin Lovelady, son of J. C. Lovelady, testified that his father bought a farm in 1921, and sold it in the latter part of 1944, or the spring of 1945; that he did his banking business with the Farmers National Bank at Duke, Oklahoma, with which bank the witness who testified to the deposits was connected, and that at the

time of trial his father was living in California with his sister; that he was completely paralyzed, and had lost his mind. He also testified that after his father and the defendant separated his father lived with him for a short time, and then bought the property involved in this action.

The wife of John Austin Lovelady testified that shortly after Lovelady and defendant were married Lovelady bought a home in Altus, and that at the time of their separation the property was sold and Lovelady gave the defendant $1,500; that the home place was sold before the defendant left so that she could get her part, and that she was satisfied with it. She further testified that after the separation Lovelady lived in their home, but they did not have room enough for him, and that he bought the property involved in this action after the defendant had returned to Edmond. She further testified that both Lovelady and the defendant were ill the greater portion of the time after their marriage; that neither Lovelady nor his wife were able to work and earn any money during the time they were married, and that Lovelady owned the farm about which her husband testified prior to the marriage of Lovelady and defendant. The record of the divorce proceeding, the deed conveying the property to Lovelady, and the deed conveying the property to plaintiff were also placed in evidence. This constituted all the evidence introduced by plaintiff, to which defendant demurred, and when the demurrer was overruled, stood on her demurrer. It follows that the evidence adduced by plaintiff stands in the record uncontradicted and undisputed.

Defendant urges that this evidence was insufficient to overcome the presumption that the property involved, having been acquired prior to the dissolution of the marital relationship, was community property. We do not agree with this contention.

The community property law was enacted in 1945, S. L. 1945, p. 118, and repealed in 1949, S. L. 1949, p. 229. It was therefore in force and effect during the marital relationship between Lovelady and the defendant. Section 1 of the Act, 32 O. S. 1947 Supp. §66, provides that all property of the husband, both real and personal, owned or claimed by him before the marriage, shall be his separate property. In subsequent sections it is provided that all property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the community or common property of the husband and wife, and each shall be vested with an undivided one-half interest therein, and that all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common gains or effects, unless the contrary be satisfactorily proved. It further provides that any funds on deposit in any bank, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in whose name they stand.

The evidence in the instant case satisfactorily establishes that during the existence of the marital relationship between the parties, the only bank account was in the name of J. C. Lovelady, and that the money on deposit in the bank at Duke was his separate funds derived from the sale of property acquired prior to the marriage, or from his efforts prior to the marriage, since the only deposit made during the marriage, except the deposit of September 14, 1946, was the sum of $100 deposited on June 12, 1946. And while the evidence does not specifically show the source of the deposit of $4,800, made on September 14, 1946, it was, under our law, when deposited in his separate account, presumed to be his separate property until the contrary was shown, and the burden of making such showing was upon the defendant. The evidence negatives the existence of any community property of any kind, or of any community funds which Lovelady could have used in the pur-

chase of the property involved in this action. It is a reasonable inference from the evidence in this case that the $2,300 check cashed by the bank on October 10th was used in part to pay for the property which he acquired on the 7th or 8th of October, and that the remainder, if any, was paid in cash, as the banker testified that Lovelady at times drew out in cash $400 or $500 at a time, and the bank statement shows that a check for $500 was cashed by the bank on September 7, 1946, and one for $900 on August 31, 1946. We have held that in cases of equitable cognizance, a demurrer to plaintiff's evidence must be treated as a motion for judgment for the defendant, and the court in such case should weigh the evidence, and that in such case the judgment of the trial court thereon will not be reversed on appeal, unless such judgment is clearly against the weight of the evidence. Biggs v. Federal Land Bank of Wichita, 186 Okla. 99, 95 P. 2d 902. We think the judgment of the trial court in this case is not clearly against the weight of the evidence. The record does not disclose whether defendant was present at the trial or not, but if so she made no effort to show the existence of any community funds or property, nor did her attorney cross-examine any of the witnesses produced by plaintiff in an effort to make such showing. In the absence of such proof we think the evidence produced by plaintiff, standing uncontradicted, was sufficient to overcome the presumption relied upon by defendant.

While we have not passed upon the question it appears from the authorities that such presumption is not conclusive, but is prima facie only, and may be overcome by proof of facts inconsistent therewith. 41 C.J.S., p. 1031, §489(2); 11 Am. Jur., p. 201, §42. In 11 Am. Jur., p. 204, §47, referring to the sufficiency of evidence to overcome the presumption, it is said:

"It has been frequently asserted by the courts that the presumptions in favor of the community character of property acquired by, or in the possession of, the spouses during the marriage can only be overcome by 'clear and convincing', 'clear and cogent', or by 'clear and conclusive' proof. So also, it has been declared that the evidence of a gift of community property by the husband to the wife must be clear. These expressions, however, are probably misleading, in that they imply more cogent proof than the law demands. It would be more accurate to say that the presumption may be overcome 'by a preponderance of evidence' or by proof to a moral certainty—that is, that degree of proof which produces conviction in an unprejudiced mind. As to whether or not the evidence offered is clear and convincing or is sufficient to overcome the presumption is a question for the trial court or jury, as the case may be; and, as in other cases, a finding in favor of either party on conflicting or contradictory evidence will not be disturbed on review."

In 41 C. J. S., p. 1034, §489 (c), the author states that the presumption is rebuttable by preponderance of the evidence. See, also, In re Peppers Estate, 158 Cal. 619, 112 P. 62.

We are of opinion that the evidence above stated, showing the sole bank account of the parties in the name of J. C. Lovelady; showing further that the parties, and especially J. C. Lovelady, were incapacitated and earned no money during the existence of the marital relationship, and negativing the acquisition and existence of any community property or funds out of which the property involved could have been purchased, was sufficient to overcome the presumption, and to require the defendant to produce evidence, if any she had, showing the existence of community property or funds out of which or with which the property in question was acquired.

Affirmed.