PRUSA v. COOPER et al.

No. 34689.  Dec. 4, 1951.

*238 P. 2d 342.*

Wm. D. Greenshields, Ponca City, and Roy W. Cox and Charles C. Buhrman, Blackwell, for plaintiff in error.

Al T. Singletary, Perry, for defendant in error.

O'NEAL, J. Stella Prusa sued R. L. Cooper and Cleo Stout in the district court of Noble county to recover damages for an alleged breach of the terms of a written lease contract. In the trial the court sustained a demurrer of the defendant Stout to plaintiff's evidence, and the action as to Stout was dismissed. A jury returned a verdict in favor of the defendant Cooper. The appeal alleges error in the dismissal of the action as to the defendant Stout, and error in the rendition of a judgment in favor of the defendant Cooper. The assignments of error will be noted in the further consideration of the record.

An amended petition was filed in which plaintiff, in her first cause of action, alleged that she was the owner of described lots in the city of Perry upon which was located a building 50 feet wide by 150 feet long, which was commonly used as a garage; that in February, 1944, she entered into a written lease agreement with the defendant Cooper for a term of five years, under which agreement Cooper agreed to pay monthly rentals at $40 per month for the first three years, and $50 per month for the last two years of the lease contract; that said lease provided that Cooper should not assign the lease or sublet the premises, or any part thereof, without the consent of plaintiff; that shortly after taking possession of the garage building the defendant Cooper, without plaintiff's consent, subleased a portion of the garage to one Pilkington who conducted a welding business therein; that the defendant Cooper subleased the rear half of the garage to the defendant Stout, who used the space for the storage of drums of oil and grease and automobile accessories. Plaintiff pleads said subleasing was a breach of the terms of the lease, and that the joint occupancy of the garage by Pilkington and the defendants, Cooper and Stout, resulted in injury to her property over and beyond the usual wear and tear of the occupancy provided for in the lease. These damages are itemized, and for which plaintiff prays a recovery in the sum of $3,250.

In plaintiff's second cause of action it is alleged that under the sublease which defendant entered into with Pilkington, the welder, defendant Cooper received a monthly rental of $125 per month; that said Pilkington occupied the premises from April 1, 1944, to November 1, 1946; that under the sublease agreement entered into by the defendant Cooper he collected rentals from the defendant Stout in the sum of $125 during the five year term of the written lease contract referred to, and that the rentals so collected by the defendant Cooper are as money had and received for plaintiff's benefit, for which she prays an accounting and a recovery in the sum of $3,410 against each defendant.

The answers of the defendants, Cooper and Stout, are in the form of general denials. As indicated, the defendant Stout was dismissed from the case upon his demurrer to the plaintiff's evi-

dence, and a jury returned its verdict in favor of the defendant Cooper. The appeal brings both the order of dismissal and the judgment here for review.

Plaintiff's assignments of error may properly be considered under her allegation that the judgments below are not sustained by the evidence, and are contrary to law.

A consideration of plaintiff's evidence in support of her first cause of action leads us to the conclusion that there was a total failure of proof to support the allegations of damages to the garage property as claimed in her first cause of action.

As plaintiff was the sole witness in her own behalf, we will present her testimony at some length. Her first item of damages, as alleged in her petition, covered a broken plate glass window. On direct examination she testified the cost of replacement was the sum of $300, but on cross-examination she admitted that the defendant Cooper, at the expiration of his lease, replaced the plate glass window at his cost.

The defendant Cooper had constructed a drain rack in the garage to service automobiles. Plaintiff claimed damages to the garage by reason of this construction in the sum of $300 and so testified. But plaintiff admitted on cross-examination she requested that the drain remain in the garage as it might be useful in future garage operations.

Plaintiff claimed damages to the front outside wall of the building in the sum of $200, claiming defendant Cooper drilled holes in the wall to hang signs.

Plaintiff claimed an item of damage in the sum of $300 for additional fire insurance premiums which she claimed arose out of the increased premiums payable by reason of defendant Stout having stored grease and oil in the back portion of the garage. No evidence was introduced as to the pre-miums previously paid, or the increase, if any, by reason of extra premiums charged.

Plaintiff claims her damage to the cement floor in the garage, as shown by her petition, was the sum of $500 without any proof showing the condition of the cement floor before Cooper's occupancy and after his vacation of the premises. Plaintiff was asked:

"Q. How much damage was done to the floor, if any? A. You mean state the amount. Q. If you know, yes. A. Well, I imagine around $1,000."

No other evidence was offered in support of the alleged damages.

With reference to plaintiff's claim of damages to the roof of the garage which she claims were occasioned by the defendant Cooper attaching a lift to a rafter and using the lift in hoisting automobile engines out of automobiles, thereby damaging the roof of the garage, plaintiff testified that she had the roof repaired at a cost of $1,000, but that the roof again came down and she had the same work done at another cost of $1,000; that these repairs were made in the year 1949, the last repair being made in July of that year and five months after the defendant's lease expired. Whatever probative value this testimony might have produced, it was deemed sufficient by the trial court to put defendant Cooper to a response thereto.

The defendant's testimony fully established the fact that no holes were drilled by him, or other occupants of the premises, on the outer wall of the garage building, but that the wall contained two sets of iron hooks which were embedded in the wall when he took possession of the garage, and which hooks were used by him to hang signs on. Defendant's testimony further discloses that he replaced the broken plate glass window in the front of the garage at his cost in the sum of $48, and that he left the auto drain at plaintiff's specific request; that there was no damage to the cement floor, other

than the usual wear and tear occasioned by its use as a garage.

One other witness testified that he was acquainted with the garage for some years, it having been constructed by his father; that he was frequently in the garage both before the lease and afterwards, and that the floor was not damaged other than might be anticipated from its use in the repair of automobiles.

The lease contract provided that plaintiff should keep the roof of the garage in repair. That the roof leaked, more or less, at all times during Cooper's tenancy is fully established by the evidence. Further testimony shows that in January, 1949, a month before the expiration of the lease, there was a heavy sleet storm, and that two or three inches of sleet accumulated on the roof; that when the defendant Cooper heard the roof cracking he and his employees found the roof had dropped down several inches and they immediately propped the roof with 4x4's across the middle of the building. The evidence establishes that other buildings with flat roofs in the city of Perry were similarly affected by the heavy sleet storm. The other damage to the roof which occurred in July, 1949, and five months after the defendant vacated the premises, was occasioned by a heavy rain.

The issue on the question of damages to the garage building was submitted to the jury under appropriate instructions, and as the finding of the jury is supported by substantial evidence, it will not be set aside on plaintiff's contention that the verdict is contrary to the evidence.

Plaintiff seeks to recover on her second cause of action on the theory that the defendant Cooper wrongfully subleased a portion of the garage to Pilkington, the welder, and to Stout, his codefendant, and that all rentals collected by Cooper should be decreed a trust fund as money had and received for plaintiff's benefit. The record does not disclose what sums were paid Cooper by Pilkington, or Stout. The court assumed the position that it was immaterial what rentals were paid Cooper by Pilkington and Stout. Plaintiff testified she did not know what rentals were collected, but she thought sublessees should have paid Cooper the sum of $125 per month for each month they occupied the premises. Plaintiff concedes failure of proof to support her second cause of action by stating:

"Plaintiff in error is not going to attempt to convince this court that the jury's verdict should be upset on this appeal insofar as it may have been based on a finding that she failed to show how much defendant, R. L. Cooper, realized from the alleged subtenants, Pilkington and Stout, and that, therefore, no recovery on that item could be allowed—it is evident that there was no adequate proof on this item;"

Plaintiff, however, does not abandon her allegation that the verdict of the jury is not in conformity with law. This on the ground that the evidence discloses a subleasing by Cooper to Pilkington and Stout in violation of the terms of the lease contract. The evidence supports the finding that the garage was leased to defendant Cooper to be used by him primarily as a sales agency for the sale of new and used automobiles; that because of the war Cooper was unable to get the sales agency of the Oldsmobile until 1947; that he permitted Pilkington, the welder, to occupy a portion of the garage so long only as Cooper did not need the space, and that Cooper erected a partition in the center of the building because it was impossible to heat the entire building, and that having no temporary use for the rear room he permitted the defendant Stout to store some of his oils and greases and automobile accessories therein, but only on a temporary basis, and until such time as Cooper might have occasion to use said space; that he made no assignment of the lease, or sublease of the premises for any definite period to either of said parties. Plaintiff complains of the court's instructions Nos.

6 and 7 which define the characteristic of an assignment as distinguished from a subleasing. Instruction No. 6 reads:

"Gentlemen of the Jury, you are instructed that it is the law of the State of Oklahoma, and that it is universally recognized to be the law of the land, that an owner of real property may legally impose a covenant, agreement or restriction in a lease to real estate against it being assigned or sublet by the lessee. However, such covenants or agreements in leases should be liberally construed and enforced, because they are not favored in law and are never implied, and their violation must be proved clearly and by a preponderance of the evidence. And if you find from a preponderance of the evidence herein that the defendant did breach or violate said covenant or agreement against subletting and that he did in fact sublet a part or portion of said building to a third party or parties, then your verdict should be in favor of the plaintiff and against the defendant and you should so state by your verdict."

Plaintiff in error's brief states that instruction No. 6 clearly stated the policy of the law as to the treatment in the courts of covenants, agreements, or restrictions imposed in lease contracts by the lessor, but complains the instruction should have gone a step further and advised the jury that if they found the issues in plaintiff's favor, that she could recover either generally or on the specific items relied on, and that such items should have been enumerated in the given instruction. It is observed that in the court's instruction No. 5, the court specifically submitted to the jury the question of whether the defendant's act amounted to a subleasing, and, if so, the damages plaintiff could recover, and in this instruction specifically itemized the items relied on by plaintiff, and advised the jury that if they found in favor of the plaintiff to fix the amount of damages occasioned by the defendant Cooper and others occupying the premises during the pendency of the lease. Plaintiff did not submit any other instruction covering the matter complained of, and the request, if made, would have been properly denied, as the alleged omitted matter would have been a restatement of the matters specifically referred to in instruction No. 5.

Instruction No. 7, given by the court, reads as follows:

"Gentlemen of the Jury, you should be advised as to the legal meaning of the words 'assignment', 'subleasing' and 'license to use' leased premises by the lessee. A transfer by the lease (sic) of the whole or a specific part of the leasehold estate for the residue or remainder of the term is an assignment. A transfer by the lessee of the whole or a specific part of the leasehold estate for any part of the term of the lease less than the whole is a sublease. A license to use is a transfer by the lessee of a part of the leasehold estate for an indefinite term wherein the lessee retains possession of and control of the whole of said leasehold estate, and does not definitely lose control and management over any part of said leasehold estate.

"However, in this case we are not concerned of assignment, but only with the question as to whether it was sublet by the defendant to third parties or whether it was just a license granted by the lessee to a third party to use some part or portion of said premises for an indefinite period of time and subject to the control and management of the lessee of the whole of said premises at all times.

"'You are further advised that under the law a lessee is permitted to license or permit a third party to use a part of the leased premises wherein the lessee retains control and management of the leased premises, and the fact that the lessee may charge or collect money for the use of the premises by said licensee does not make it a subletting, or a violation of his contract against subletting."

Plaintiff does not complain that the instruction does not properly define the distinction between an assignment and a subleasing, but contends the instruction unduly presses on the jury's attention the legal effect of a "license to use" and that this emphasis was bound to slant the instruction in the minds

of the jury toward a finding that the conduct of the defendant Cooper in dealing with Pilkington and Stout amounted to "just a license granted by the lessee to a third party." Here again the specific complaint is that the court should have taken one additional step and advised the jury more fully as to the distinction between a "sublease" and a "license."

Clearly this objection is without merit. Instruction No. 7 tells the jury "a transfer by the lessee of the whole or a specific part of the leasehold estate for any part of the term of the lease less than the whole is a sublease." Plaintiff's evidence discloses she learned as early as 1945 that Stout had stored some drums of oil and grease and automobile equipment in the rear of the garage, and that Pilkington, the welder, occupied space in the front part of the garage 'in 1944 and 1946. At no time did she seek a cancellation of the lease with Cooper on the ground that he had breached the terms thereof by executing subleases. She did, on numerous occasions, request that Cooper pay her additional rentals by reason of the additional use of the garage.

"A mere permissive use of land which amounts to nothing more than a license is not a breach of a restriction against subletting." 51 C.J.S., Landlord & Tenant, §33, p. 543.

Many cases are cited under the text in support of the above rule.

In the case of Stroup Lumber Co. v. Larmor, 110 Kan. 670, 205 P. 621, the Supreme Court of Kansas cites with approval the case of Lowell v. Strahan, 145 Mass. 1, 12 N. E. 401, which announces the rule:

" 'Every license to do an act upon land involves exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further.' "

It is unnecessary to pursue the point further as the verdict of the jury embraces a necessary finding that the lease was not breached by a subletting, and furthermore, there being no proof of loss or damage to plaintiff's property, other than usual wear and tear, we hold that the demurrer of the defendant Stout was properly sustained, and that the verdict of the jury is neither contrary to the evidence, nor the law.

Judgment affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.