H. L. SNOW, Appellant,

v.

John WINN and Wayne Winn, Partners, d/b/a Winn Oil Company, and John N. Crim, Appellees.

No. 51888.

Supreme Court of Oklahoma.

Feb. 26, 1980.

---

Arney & Millspaugh, Weatherford, for appellant.

Donley, McMillin & Winchester by James R. Winchester, Weatherford, for appellees.

OPALA, Justice:

Plaintiff [landlord] brought this suit to terminate a commercial lease with defendants [tenant] and to quiet his title in the demised premises. The leasehold estate in suit consists of a filling station with car wash facilities situated in the City of Weatherford. Landlord claimed that tenant breached the lease agreement by his [1]

"assignment" of the premises to a third party [Operator] without landlord's consent [2] unauthorized alteration of a structure upon the premises and [3] impermissible use of the premises for a convenience grocery store contrary to the "purpose clause" of the agreement. From a judgment sustaining tenant's "demurrer" to the evidence and entering judgment in his favor, landlord appeals. The Court of Appeals viewed, no doubt, the landlord's suit as an action at law. It held that landlord's evidence, considered in its most favorable light, did establish a prima facie case for submission to the trier of fact. On this ground the Court of Appeals reversed the trial court's decision and remanded the cause "for further proceedings." On tenant's petition, we grant certiorari and vacate the appellate court's opinion. Our pronouncement treats the suit as one in equity and views the judgment as not against the clear weight of the evidence.

Landlord's suit to cancel the lease and to quiet title to the property is unmistakably of equitable cognizance.[1] It is to be governed by the rules of procedure applicable to equitable remedies.[2]

In equity a defendant's "demurrer" to the evidence is treated as a motion for judgment in demurrant's favor. Unlike in law actions, demurrer in equity does not require the judge to disregard all evidence favorable to the demurrant's position, but, on the contrary, calls upon the chancellor-trier to consider and weigh all the evidence adduced to determine in whose favor it preponderates.[3] On appeal from the equity order sustaining a "demurrer" to the evidence, the judgment of the trial court must be affirmed unless found to be against the clear weight of the evidence. Whenever possible, an appellate court must in an equity suit render or cause to be rendered that

---

1. *Brewer v. Baker,* Okl., 283 P.2d 203, 206 [1955]; *Townsend v. Creekmore-Rooney Company,* Okl., 332 P.2d 35, 36–37 [1958]; *Clovis v. Clovis,* Okl., 460 P.2d 878, 879–880 [1969].

2. *McCubbins v. Simpson,* 186 Okl. 417, 98 P.2d 49, 51 [1940].

3. *Lovelady v. Loughridge,* 204 Okl. 186, 228 P.2d 358, 360 [1951]; *Forshee v. Anderson,* Okl., 332 P.2d 688, 689–690 [1958]; *Looney v. Bruin Oil Corporation,* 190 Okl. 266, 122 P.2d 1007, 1008 [1942].

judgment which, in its opinion, the trial court should have rendered.[4] An equity judgment need not rest entirely upon uncontradicted evidence. It is not necessarily fatal to its validity if a different conclusion might have been reached upon all of the evidence presented.[5]

## I.

The written lease sought to be declared terminated expressly denies to the tenant the power to assign or transfer his estate without landlord's written consent. The record shows that the demised facility was operated by one Crim [Operator] under what may be called a marketing arrangement with the tenant. The operator received as compensation a four-cent commission on each gallon of gasoline sold and was allowed to receive all the profits from the sales made in the convenience store. Tenant, who owns a local wholesale gasoline company, supplied the station with gasoline, paid all the utilities and all the expenses of repair and maintenance of the building upon the premises.[6]

An assignment operates to transfer the whole or some specific part of the leasehold estate for the entire remainder of the lease term. A sublease, on the other hand, is a transfer of the whole or portion of the leasehold estate for a specified period that extends for less than the whole term.[7] Operator's arrangement with tenant does not amount either to an assignment or sublease. Rather, it is but a license revocable

at will to sell convenience store items and market tenant's gasoline on a commission basis. The tenant did in law and in fact retain absolute control and management of the premises. He had the option of hiring and firing employees who worked in the establishment. The operator had no estate and paid no rentals. In short, his interest—a mere revocable license—does not rise to the dignity of an unauthorized assignment or sublease.

## II.

The lease provides that at the end of its term the tenant will "peaceably yield up the premises and all erections and additions made on the same . . ." During the tenant's occupancy the automatic car wash area came to be enclosed and enlarged for use as a convenience store. All the objectionable alterations were designed to adapt the premises to tenant's expanded store operations. Inventory increased from the original 30 some items to a full-line convenience store merchandise. It is at this point that the landlord appears to have first voiced his disapproval of tenant's marketing activities as incompatible with the purpose clause of the lease agreement.[8]

The lease clearly contemplates "erections and additions" upon the premises and requires *no* consent for their construction. Nor does it expressly prohibit the tenant from making these changes in the premises. The alterations deemed objectionable enlarged the building and doubt-

4. *Geb v. Wilkins*, Okl., 399 P.2d 456, 459 [1965]. Final disposition of the controversy cannot be effected by the appellate court if it determine that the order sustaining defendant's "demurrer" to plaintiff's evidence in equity is in fact against the clear weight of the evidence. In that event, the party-defendant must be afforded opportunity to present its evidence. Remand and retrial also are required when the trial court has failed to decide a material issue of fact. *Davis v. Gwaltney*, Okl., 291 P.2d 820, 824 [1955].

5. *Harrison v. Eaves*, 191 Okl. 453, 130. P.2d 841, 843–844 [1942].

6. Lease agreement provided that landlord pay for all major maintenance and repair. Minor maintenance and repair (under $50) is the re-

sponsibility of tenant. Operator had no duty of discharging tenant's obligations under the lease.

7. *Prusa v. Cooper*, 205 Okl. 423, 238 P.2d 342, 346 [1951].

8. According to the record tenant may have built on the demised premises without landlord's consent another car wash facility that was manually operated. Landlord has raised no objection because it is related to the tenant's automobile business. It is the convenience store operation and adaptation of the premises to that business purpose which landlord views as a breach.

less increased the value of the premises. Whether the lease requires that this added property be dismantled at its termination and that the premises be restored to their original condition is not before us. Suffice it to say, the evidence does not show that the tenant did in fact breach the lease agreement by committing waste in making structural changes harmful to the landlord's estate.

### III.

The purpose clause of the lease in suit is as follows:

". . . [tenant] will use said premises for a gasoline service station, car wash and *associated activities*" [emphasis added]

For proof of tenant's breach of this covenant landlord relies on tenant's use of the premises as convenience store and asserts it is impermissible as an "associated" activity. Landlord's evidence showed he had allegedly had an oral understanding with the tenant, before the lease was signed, that the premises would not be used for a convenience store.

Before the tenant moved upon the leased premises, landlord knew that "Tank and Tummy" would be the name of tenant's establishment and that the store would be selling convenience store items, such as bread, milk, candies and various snack items. Tenant had in fact been selling at the filling station over 30 items in that category ever since it first opened for business in 1972. Since the station facility neither had a wash-and-lube bay nor was used to market tires or car accessories, it seemed to be suitable mainly for "quick stop" gas and convenience food sales.

The trial court held that absent a lease provision expressly prohibiting the sales shown to have been made, a reasonable interpretation of the phrase "associated activities" in the purpose clause of the lease does not rule out a convenience store.

Unless fraud is involved, pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of an executed written agreement. The written instrument cannot be varied, modified or changed by parol testimony.[9] When proof of an oral promise is essential to one's claim and the testimonial evidence proffered as to its existence, though unobjected to, is violative of the parol evidence rule, it is entirely proper for the court to rule as a matter of law that the claim is without legal support. This is so because the parol evidence rule is part of the substantive rather than adjective law.[10]

Under the terms of the lease agreement tenant is not expressly prohibited from operating a convenience store. The oral promise landlord relied upon, if one in fact existed, is unenforceable in law and without binding force. If the lease phrase "associated activities" may be viewed as a latent ambiguity,[11] there is ample support for the trial judge's view that retail gasoline operations are, in the light of present-day merchandising methods, commonly associated with convenience store facilities and that the parties intended to have food items sold on the premises.

Upon examination of the entire record, we hold that, while some portions of material proof may be in conflict, the judgment is not against the clear weight of the evidence nor is it contrary to the established principles of equity.

---

9. Under the terms of 15 O.S.1971 § 137, referred to generally as the parol evidence rule, testimonial evidence may be admissible to vary or contradict the terms of a written contract when fraud, accident or mistake is relied upon for relief from the binding effect of a contract. *Dewberry v. Yellow Manufacturing Acceptance Corp.*, Okl., 396 P.2d 522, 524 [1964]; *Lone Star Gas Company v. Oakman*, Okl., 283 P.2d 810, 813–814 [1955].

10. *Investors Royalty Co. v. Lewis*, 185 Okl. 302, 91 P.2d 764, 766 [1939]; *Warren v. Pulley*, 193 Okl. 88, 141 P.2d 288, 292 [1943].

11. Testimonial evidence of tenant's promise would tend to vary, contradict or modify the lease agreement. Oral testimony, however, would be admissible to explain the meaning of words when there is a latent ambiguity in the contract. *Sunray Packing Co. v. Wilson*, Okl., 268 P.2d 264, 267 [1954]; *Daniel v. Pappas*, 93 Okl. 165, 220 P. 355, 357 [1923].

The opinion of the Court of Appeals is vacated and trial court's judgment affirmed.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, HARGRAVE, DOOLIN and SIMMS, JJ., concur.

HODGES, J., dissents.