### Tammy A. LANGER

v.

### UNITED STATES FIDELITY & GUARANTY CO.

Supreme Judicial Court of Maine.

Argued Nov. 16, 1988.
Decided Dec. 20, 1988.

Arlyn H. Weeks (orally), J. Michael Conley, Conley, Haley & O'Neil, Bath, for plaintiff.

Jonathan A. Piper (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

Here on report, this case presents a question novel to us and apparently to all other jurisdictions: whether the "family coverage" provision of the "business auto policy" issued to the State of Maine on its fleet of motor vehicles covers a ward of the State injured in an accident involving no state employee, no state vehicle, and no state supervision. We conclude that the language of the policy issued by United States Fidelity & Guaranty Company (USF & G) cannot reasonably be construed to grant such coverage.

The Superior Court (Sagadahoc County; *Chandler, J.*) has reported this case on agreed facts pursuant to M.R.Civ.P. 72(b). Although the court has reported a set of questions of law, a Rule 72(b) report brings up to us the entire action and our duty is to "determine" the whole case, as if we were sitting at *nisi prius,* on the basis of the stipulated facts and the reasonable inferences flowing therefrom. *See Buck v. Kilgore,* 298 A.2d 107, 108 (Me.1972); *Vachon v. Town of Lisbon,* 295 A.2d 255, 258–59 (Me.1972).

On August 29, 1985, Tammy Langer was seriously injured when the motorcycle on which she was a passenger collided with a Volkswagen Rabbit in Woolwich. She was then seventeen years old and was a ward of the State residing in the Military and Naval Children's Home, a State-operated institution located in Bath. At the time of the accident, she was visiting her friend, the operator of the motorcycle. The two operators were jointly at fault in the accident, but their available insurance did not fully compensate Langer for her injuries: the motorcycle was uninsured and the

Volkswagen was insured only for the statutory minimum of $20,000 per person, 29 M.R.S.A. § 787(1) (1978).

After settling with the Volkswagen's insurer for the $20,000 policy limit, Langer filed a claim with USF & G, the liability insurer on all motor vehicles owned by the State, under the policy endorsements entitling "You [i.e., the State] or any family member" to recover up to $40,000 for personal injuries caused by uninsured or underinsured motorists, and up to $1,000 for medical expenses arising from any automobile accidents.[1] For purposes of both medical payments and uninsured motorist coverage, the State's insurance policy defines a "family member" to be "a person related to **you**, by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child." (Boldface in original) Thus a claimant under the family coverage provisions must satisfy two tests: both relationship to the policyholder and membership in the policyholder's household. It would distort the meaning of the "ward or foster child" clause to read it as conferring automatic "family member" status because that reading would give substantially greater protection to wards and foster children than the policy gives to biological and adopted children. The additional test the biological or adopted child must meet to be covered is not dependency, which is inherent in the concept of wardship, but rather residence, which is not. To be covered, Langer must therefore demonstrate that, in addition to being a ward of the State, she was a "resident of [the State's] household" within the meaning of the policy.

Langer would have us answer a different question. Rather than focusing directly on whether there is such a thing as "the State's household," she argues that she is covered because the State is the head of *her* household. In support of this subtle expansion of the scope of coverage, she invokes the canon that standard form insurance policies, being drafted by the insurer, must be construed to meet the reasonable expectations of the policyholder and that language may be interpreted as limiting coverage only if it would be so understood by an ordinary person in the shoes of the policyholder. *See Gross v. Green Mountain Ins. Co.*, 506 A.2d 1139, 1141 (Me.1986); *Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 921 (Me.1983).

"The rule of strict construction," however, "is a rule of last resort which must not be permitted to frustrate the intention the parties have expressed, if that can otherwise be ascertained." *Tinker v. Continental Ins. Co.*, 410 A.2d 550, 554 (Me. 1980). It is important to remember that the State of Maine, which is not a party to this proceeding, is the policyholder; it was the State that contracted for and paid the premiums required for whatever risk is covered by USF & G. We see no sign that the State as the policyholder had *any* expectation that persons in Langer's situation would be covered, let alone that such an expectation would be reasonable in light of the language of the policy. We see no sign that the State understood it was incurring the cost of insuring against the open-ended risk urged by Langer.

If there is ambiguity in a given passage of a contract, the intention of the parties is to be ascertained by examining the instrument as a whole. *Gross v. Green Moun-*

---

1. The pertinent provision of the medical payments endorsement reads as follows:

    D. WHO IS INSURED
        1. **You** or any **family member** while occupying or, while a pedestrian, when struck by any auto.
        2. Anyone else occupying a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.
The pertinent provision of the uninsured motorists endorsement reads as follows:

    D. WHO IS INSURED
        1. **You** or any **family member**.
        2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.
        3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.
(Boldface in original)

*tain Ins. Co.*, 506 A.2d at 1141; *Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d at 921. In the case at bar, the instrument as a whole is styled a "business auto policy," and the policyholder's business is designated as "State Government." This language by itself is hardly dispositive,[2] but it provides some insight into the intent of the contracting parties. Our conclusion that the parties never intended to provide blanket coverage for all wards of the State, at all times and places, is reinforced by the language of the family coverage clause itself, which is altogether inappropriate to the task to which Langer seeks to put it. The clause as drafted contemplates a "you" who can incur personal injuries as well as a "your household" whose members (if related to "you") are also covered.

This policy makes no reference to the Military and Naval Children's Home or vehicles it might operate—it provides general automobile insurance for the State. Whatever plausible interpretation might be given the term, the State does not have "a household": either it has none or it has many, conceivably ranging from the Blaine House to a dormitory at Orono to a cell block at Thomaston. The primary purpose of this policy is to cover the fleet of State-owned motor vehicles. Had the person representing either the State or USF & G in the contracting process envisioned extending the coverage to include personal injuries to wards of the State while off the premises and outside the supervision of the institutions in which they reside, questions about the boundaries of coverage would immediately dominate the agenda. Those questions could not possibly be left for resolution by a boilerplate clause whose most natural interpretation is to provide no coverage at all in this situation, and whose only plausible alternative interpretation gives an absurdly nebulous description of the coverage that could be anticipated by the State and the risk that must be underwritten by the insurer.

By no stretch of the imagination can it be a reasonable expectation of the State officers buying insurance for its fleet of vehicles that the insurer would have undertaken such an open-ended risk. Those officers, necessarily concerned with cost to the State, would be most unlikely to incur the increased premiums that plainly would go with that uncertain risk. We know of no State policy to provide such coverage for its wards; the State expressly imposes no such duty on parents at large.[3] We find no merit in Langer's argument that the clause must be given effect and can be given effect only by holding that she is covered. USF & G includes this or a similar clause in every automobile policy it writes, nationwide. There is no reason to give a strained and unnatural construction to the family coverage clause appearing in this standard policy. The clause simply has no operative effect for the State, any more than it does when the policyholder of this "business auto policy" is a business corporation or a single person without a household.

The entry is:

Judgment for defendant.

All concurring.

---

2. If the policyholder is the flesh-and-blood owner of a small business, and the family car is used for business purposes, the "business policy" designation may merely reflect the increased risk of business use rather than any intent to disavow the family coverage. Uninsured motorist policies issued in the trade names of unincorporated businesses have been construed as providing family coverage to the partners or proprietors. *See, e.g., O'Hanlon v. Hartford Accident & Indem. Co.*, 639 F.2d 1019 (3d Cir.1981).

3. By a statute too recent to be applicable in this case, parents may no longer inadvertently be deprived of household uninsured motorist coverage, but there remains a statutory mechanism by which they can waive the coverage. 24–A M.R.S.A. § 2902–A (Supp.1988). Moreover, those parents who do not own automobiles have no duty to purchase automobile insurance, and by the rule almost universally accepted in other jurisdictions, if parents "own" their automobiles only indirectly, through family-held corporations, the family coverage clause of the corporate auto policy provides no protection. *See, e.g., General Ins. Co. of America v. Icelandic Builders, Inc.*, 24 Wash.App. 656, 604 P.2d 966 (1979).