Wayne KUNZ; Olive Kunz; Glenn V. Turner; Carol Turner, Plaintiffs–Appellants,

v.

UTAH POWER & LIGHT COMPANY, Defendant–Appellee.

No. 87–4361.

United States Court of Appeals, Ninth Circuit.

March 22, 1989.

Before SKOPIL, NELSON and BRUNETTI, Circuit Judges.

## ORDER

Various landowners ("Landowners") brought suit against the Utah Power & Light Company ("Utah Power") for damages to real and personal property caused by flooding waters that were discharged from a lake used as a water storage system by Utah Power. The district court dismissed all of the Landowners' theories of liability except for the negligence theory. In a special verdict, the jury found that Utah Power was not negligent and the court entered judgment for Utah Power. On appeal, Landowners contend that the court below erred in dismissing its alternative theories of liability. We certify several questions to the Idaho Supreme Court because we are unable to determine if, under Idaho law, an action may be maintained pursuant to strict liability, direct trespass, or private nuisance theories for damages caused by the intentional discharge of stored water.

## BACKGROUND

In *Kunz v. Utah Power & Light Co.*, 526 F.2d 500 (9th Cir.1975) (*"Kunz I"*), we described the structure and operation of the identical river system involved here. We borrow extensively from that description.

Bear Lake lies on the border between Idaho and Utah. Bear River begins high in the Uinta Mountains of Utah, meanders back and forth between Utah and Wyoming, flows north some distance into Idaho, and finally turns back south into Utah, where it terminates in the Great Salt Lake. Bear River does not enter naturally Bear Lake; instead it flows past it a few miles to the north. In about 1917, however, the predecessor of Utah Power constructed Stewart Dam on the river, diverting the river's flow southward via canals into Mud Lake, which connects with Bear Lake. Bear Lake thereby is utilized as a reservoir. After the water reaches Bear Lake, it flows northward out of the lake, by gravity or through pumping, via an outlet canal to rejoin the old natural bed of Bear River some distance north of Stewart Dam. Between certain maximum and minimum limits (the height of the release gates and the depth of the pumping intake facilities), Utah Power can control the flow out of Bear Lake, and it can close the lake so that the flow continues directly down the river. The use of Bear Lake for water storage is

the central feature of the whole system. The dam, canals, and the control facilities are located within Idaho.

Utah Power operates the system under the authority of various federal statutes, a court decree, and the Bear River Commission (established by the Bear River Compact, a joint effort of Idaho, Utah, and Wyoming). The explicit purposes for which Utah Power is commissioned to operate the system are (1) to store water for irrigation throughout the valley in Idaho and Utah below the Bear Lake facilities and (2) to generate hydroelectric power. In addition, as *Kunz I* conclusively established, Utah Power is required to use the facilities for flood control, particularly as to the spring runoffs of the watershed. Flood control is not one of the specified purposes imposed by the authorizations but is imposed by common-law negligence principles. *See generally Kunz*, 526 F.2d at 502–04. Additionally, the Bear River Compact establishes a minimum irrigation reserve level requirement. Under the dictates of the compact, Bear Lake must be maintained at an elevation of 5914.61'.

Utah Power regulates the storage capacity of Bear Lake by adjusting the lake's elevation. The key period is spring because during that period the runoffs cause a substantial rise in the lake's elevation. The full capacity level of the lake is 5923.-65'. In regulating the lake elevation Utah Power balances the competing factors, including, irrigation, flood control, fish and wildlife recreation, and power generation.

Landowners are numerous farmers who own or lease riparian lands, and a private irrigation company, located along the Bear River below Bear Lake. Prior to 1917, much of these lands were devoted to orchard grasses and wild hays which were dependent upon flooding from the natural spring runoffs to maintain their growth. The installation of the water storage system in 1917 harnessed the spring runoffs and stopped the flooding, so the ranchers converted their operations to alfalfa and cereal crops, which will not tolerate floods.

During the period between 1983–1986, the spring runoffs were unusually heavy. During this period, Landowners' lands were flooded by stored and naturally flowing waters which were respectively discharged and "bypassed" by Utah Power from Bear Lake into the natural channel of Bear River in amounts exceeding the carrying capacity of the natural channel.

The Landowners filed an amended complaint seeking damages pursuant to a negligence theory and, alternatively, pursuant to a strict liability theory based on the *Fletcher v. Rylands*, L.R.1 Ex. 265 (1866) aff'd *Rylands v. Fletcher*, L.R.3 H.L. 330 (1868), a direct trespass theory, or a private nuisance theory. The liability and damages issues were bifurcated. The Landowners moved for summary judgment on the liability issue. The court below, in a memorandum decision *sua sponte*, dismissed all of the theories of liability, except negligence, for failure to state a cause of action recognized by Idaho law. In a special verdict, a jury found Utah Power not negligent. The court entered judgment for Utah Power thereon. Landowners moved for a judgment notwithstanding the verdict, or, alternatively, for a new trial. Both motions were denied. Landowners timely appealed.

## DISCUSSION

We review *de novo* the lower court's construction of Idaho law. *Churchill v. F/V Fjord (In re McLinn)*, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc). We must determine whether the district court erred in holding that Idaho law does not recognize Landowners' alternative theories of liability in cases like the one presented here.

Two different lines of cases have come down from the Idaho Supreme Court that apply different liability standards under facts similar to our case. One line of cases requires a showing of negligence to hold a party liable for damages resulting from the escape, seepage, or percolation of water that was "artificially" brought upon that party's land. *See, e.g., Stephenson v. Pioneer Irrig. Dist.*, 49 Idaho 189, 288 P. 421 (1930); and *Burt v. Farmer's Co-Op. Irrig. Co.*, 30 Idaho 752, 168 P. 1078 (1917). In *Stephenson* and *Burt* the Idaho Supreme Court stated:

Under the common law one who diverted water from its natural course did so at his peril, and was held practically to be an insurer against damage which might result from such action. *Fletcher v. Rylands*, L. R. 1 Exch. 265, affirmed L. R. 3 H. L. 330.... The common law has been modified and relaxed in this and other arid states, so that the owner of an irrigation ditch is only liable for damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining, or operating the ditch.

*Burt*, 168 P. at 1082 (citations omitted), *quoted in Stephenson*, 288 P. at 422.

Another line of cases holds that a riparian owner of lands abutting a stream who obstructs or diverts the stream and causes damages to a riparian owner on the opposite side or to owners on land abutting above or below the stream are liable without proof of negligence. *See, e.g., Campion v. Simpson*, 104 Idaho 413, 659 P.2d 766, 768 (1983); *Milbert v. Carl Carbon, Inc.*, 89 Idaho 471, 406 P.2d 113, 117 (1965); and *Fischer v. Davis*, 19 Idaho 493, 116 P. 412, 413 (1911). In *Campion v. Simpson*, the court characterized as wrongful *per se* the obstruction of a stream system which partially blocks the stream and diverts the waters against another causing damage thereto. *Campion*, 659 P.2d at 768.

 As for the direct trespass and private nuisance theories, the Idaho Supreme Court has yet to address either theory in the context of discharge of stored water. Therefore, we seek the court's guidance on this matter. Despite counsel's diligence in researching and arguing relevant cases, we are unable to discern how Idaho courts would decide several important issues. As required by Idaho Appellate Rule 12.1, we find that there is no controlling precedent on these issues and that an immediate determination of these issues "would materially advance the orderly resolution" of Landowners' appeal.

We certify the following questions to the Idaho Supreme Court:

(1) Under Idaho law, may one be held liable without proof of fault for damages caused by the intentional discharge of water?

(2) Under Idaho law, may one be held liable pursuant to a direct trespass theory for damages caused by the intentional discharge of water?

(3) Under Idaho law, may one be held liable pursuant to a private nuisance theory for damages caused by the intentional, but nonnegligent, discharge of water?

We respectfully request the Idaho Supreme Court to exercise its discretionary authority under Idaho Appellate Rule 12.-1(c) to accept and decide these questions. Our phrasing of the questions should not restrict the court's consideration of the problems and issues involved. "The court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." *Toner v. Lederle Laboratories*, 779 F.2d 1429, 1433 (9th Cir.1986); *accord Meckert v. Transamerica Ins. Co.*, 742 F.2d 505, 507 (9th Cir.1984). If the Idaho Supreme Court deems the issues presented by this case to be inappropriate for certification, or if it chooses to decline the certification for any other reason, it should state so, and we will resolve the issues according to our perception of Idaho law.

The Clerk will file a certified copy of our Order with the Idaho Supreme Court under Idaho Appellate Rule 12.1(b). This panel retains jurisdiction over further proceedings in this court. The parties will notify the Clerk within one week after the Idaho Supreme Court accepts or rejects certification, and again within one week after that court renders its opinion.

So ordered.