2004 OK 9

**AMERICAN ECONOMY INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Steve BOGDAHN and Bana Bogdahn, both individually and as parents and next friends of Blake Bogdahn, a minor, Defendants–Appellants.**

No. 99,392.

Supreme Court of Oklahoma.

Feb. 10, 2004.

---

Duke Halley, Woodward, OK, for Defendants–Appellants.

Mark E. Bialick and Katherine T. Loy, Oklahoma City, for Plaintiff–Appellee.

BOUDREAU, Justice:

¶ 1 Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.2001, §§ 1601–1611, the United States Court of Appeals for the Tenth Circuit on its own motion certified the following question of Oklahoma law:

Whether Blake Bogdahn was a person insured under the uninsured motorist provisions of the American Economy policy issued to Hillcrest Pharmacy, Inc. as the named insured?

We rephrase the certified question into the following two questions:

1. Is the definition of an insured in the UM endorsement of the American Economy policy issued to Hillcrest Pharmacy, Inc. ambiguous, such that the doctrine of reasonable expectations can be applied to define Blake Bogdahn as an insured?

2. If so, does the statutorily mandated UM selection/rejection form create a reasonable expectation of coverage for Blake Bogdahn, such that the policy must be reformed to provide such coverage?

Our answer to the first question is that the definition of an insured is not ambiguous and therefore the doctrine of reasonable expectations cannot be applied to define Blake Bogdahn as an insured. Because of our answer to the first question, it is unnecessary for us to answer the second question.

## I. BACKGROUND

¶ 2 To place the questions in perspective, we recite the facts and procedural history provided to us by the certifying court. Hillcrest Pharmacy, Inc. (Hillcrest Pharmacy) is a corporation with its principal place of business in Woodward, Oklahoma. Since at least the late 1960s, Hillcrest Pharmacy has purchased commercial liability insurance through Figley Salz & Co., Inc., a local insurance agency. In 1990, the insurance agency began procuring insurance for Hillcrest Pharmacy from American Economy Insurance Company (American Economy). Shortly thereafter, the sole owner of Hillcrest Pharmacy, Lanny Ducket, sold his interest in Hillcrest Pharmacy to the Bogdahns, who chose to continue insurance coverage through American Economy.

¶ 3 On August 19, 2000, the Bogdahns' minor son, Blake, was seriously injured when he fell off the back of an all-terrain vehicle (ATV) driven by a friend, who was also a minor. The ATV was owned by the friend's parents and was apparently uninsured. The Bogdahns, through their attorney, requested coverage for Blake's injuries under the uninsured motorist (UM) endorsement of the American Economy policy issued to Hillcrest Pharmacy. American Economy denied coverage, concluding the ATV was not a covered vehicle under the policy and that Blake was not an insured under the UM endorsement.

¶ 4 American Economy brought a diversity action in the United States District Court for the Western District of Oklahoma, seeking a declaration that it was not required to provide coverage under the UM endorsement for Blake's injuries. The Bogdahns filed a counterclaim seeking reformation of the policy in order "to comply with the intentions and reasonable expectations of the parties." Alternatively, the Bogdahns asked that American Economy be required "to answer in negligence for all damages resulting from its failure to obtain coverage as requested and reasonably expected by" the Bogdahns and Hillcrest Pharmacy.

¶ 5 American Economy moved for summary judgment, arguing that the policy did not provide UM coverage for Blake's injuries and that no ground for reformation or evidence of constructive fraud or negligence existed which would require that UM coverage be provided. In granting summary judgment in favor of American Economy, the federal district court concluded that Blake was not an insured under the UM endorsement. Further, the court concluded there was no basis under Oklahoma law for reforming the policy as requested by the Bogdahns.

¶ 6 The Bogdahns appealed. The Tenth Circuit certified its question to us. In its certification order, the Tenth Circuit observed that the Oklahoma Supreme Court has never squarely addressed whether "listing a family-owned corporation as a named insured, with the concurrent inclusion of fam-

ily members in a commercial policy" creates an ambiguity in the policy.

### The Policy

¶ 7 The policy listed Hillcrest Pharmacy as the sole "named insured" and listed the "form of business" as a "corporation." The policy stated that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured." In addition to providing coverage for Hillcrest Pharmacy's vehicles, the policy contained an endorsement providing UM coverage. That endorsement contained the following relevant provisions:

A. COVERAGE

We will pay, in accordance with Title 36, Oklahoma Statutes, all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident."

B. WHO IS AN INSURED

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto". . . .

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

The policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child."

### II. APPLICABLE LAW

¶ 8 Oklahoma law governing insurance coverage disputes is well-established. The foremost principle is that an insurance policy is a contract. *Cranfill v. Aetna Life Ins. Co.*, 2002 OK 26, ¶ 5, 49 P.3d 703, 706. Parties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by the terms of the contract. *Wiley v. Travelers Ins. Co.*, 1974 OK 147, 534 P.2d 1293, 1295. It necessarily follows that courts are not at liberty to rewrite the terms of an insurance contract. *Id.*

¶ 9 In *Max True Plastering Co. v. USF & G Co.*, 1996 OK 28, 912 P.2d 861, we adopted the doctrine of reasonable expecta-

tions. This doctrine evolved as an interpretive tool to aid courts in discerning the intention of the parties, *id.* at 864, when the policy language is ambiguous or when an exclusion is "masked by technical or obscure language" or "hidden in a policy's provisions." *Id.* at 870. Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. *Id.* Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the objectively reasonable expectations of the insured to fashion a remedy. *Spears v. Shelter Mutual Ins. Co.*, 2003 OK 66, ¶ 6, 73 P.3d 865.

¶ 10 The doctrine of reasonable expectations may be applied only when

(1) the challenged policy language is ambiguous, or

(2) an exclusion within the policy is

 (a) masked by technical or obscure language, or

 (b) hidden in a policy's provisions.

*Max True Plastering Co. v. USF & G*, 1996 OK 28, ¶ 24, 912 P.2d 861, 870.

¶ 11 In the instant case, the challenged language is not an "exclusion within the policy." Thus, unless we find as a matter of law that the language defining an insured in the UM endorsement is ambiguous, the doctrine of reasonable expectations cannot be applied to the policy. Whether the language is ambiguous is a question of law. *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 17, 963 P.2d 572, 575. The test for ambiguity is whether the language "is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer." *Cranfill*, 2002 OK 26, ¶¶ 7–8, 49 P.3d at 706.

### III. ANALYSIS

¶ 12 The UM endorsement covers compensatory damages for bodily injury. In previous cases we have said, for UM purposes, Class 1 insureds are "named insureds and resident relatives" and Class 2 insureds are "individuals insured in the policy only by reason of their occupancy or permissive use

of a covered vehicle." *Torres v. Kansas City Fire & Marine Ins. Co.*, 1993 OK 32, ¶ 5, 849 P.2d 407, 409 n. 4. To recover in this case, the Bogdahns' minor son must qualify as a Class 1 insured since the ATV was not a covered vehicle.

### The Definition of an Insured in the UM Endorsement Is Not Ambiguous.

 ¶ 13 The UM endorsement defines a Class 1 insured as *"You "* and, in addition, *"If you are an individual, any 'family member.'"* The word "You" is not susceptible to two or more interpretations—it plainly refers to the named insured which, in this case, is Hillcrest Pharmacy. Similarly, the phrase "If you are an individual, any 'family member'" is not susceptible to two or more interpretations. The term "family member" is qualified or limited by the phrase "If you are an individual." Since the named insured, Hillcrest Pharmacy, is not an individual, no "family members" qualify as Class 1 insureds.

¶ 14 Thus, unless we accept one or more of the Bogdahns' arguments, the Bogdahns' minor son was not an insured person under the UM endorsement and, in fact, there are no Class 1 insureds under the UM endorsement.

¶ 15 The Bogdahns argue the UM endorsement is ambiguous for two reasons. First, they assert we must find the policy language ambiguous in order to be consistent with our earlier decision in *Aetna Cas. & Sur. Co. v. Craig,* 1989 OK 43, 771 P.2d 212. They contend that when the named insured is a corporation we "deemed it appropriate" in *Craig* to substitute the corporation's share-

holders as Class 1 insureds and the corporation's employees as Class 2 insureds. We disagree.

¶ 16 In *Craig,* we answered the certified question of whether an injured employee/passenger in a covered auto may stack UM coverage on a fleet of commercial vehicles covered by a single insurance policy. To answer the question we relied on three previous decisions dealing with stacking: *Babcock v. Adkins,* 1984 OK 84, 695 P.2d 1340; *Rogers v. Goad,* 1987 OK 59, 739 P.2d 519; and *Stanton v. American Mut. Liability Ins. Co.,* 1987 OK 118, 747 P.2d 945.[1] After reviewing these decisions, we held that "ONLY Class 1 insureds may stack the uninsured motorist protection in a commercial fleet insurance policy." *Craig,* 771 P.2d at 214 (emphasis in original).

¶ 17 The dissent to *Craig* argued that the injured employee was not merely occupying a covered auto but was also "acting in the capacity of an agent for the *sole* benefit of the corporate named insured." *Id.* at 218–19 (Wilson, J. dissenting) (emphasis in original). Because of this, the dissent would have allowed the employee to stack UM coverage. According to the dissent, since a corporate named insured is "an incorporeal (without physical body) entity ... and can *only* act through its officers and agents ... the 'named insured' designation ... refers to those acting in the course and scope of the corporation's authority—the agents," for purposes of UM coverage. *Id.* (emphasis in original).

¶ 18 *Craig* criticized the dissent and impliedly rejected the dissent's corporeal entity

---

1. In *Babcock v. Adkins,* 1984 OK 84, 695 P.2d 1340, we held that only persons who qualify as insured under a "series of policies" may stack UM coverage, and stated that "those qualifying as insured by reason of status as passengers or permissive users do not qualify as insureds beyond the [single] policy covering the vehicle in which they are located when injured by an uninsured motorist." *Id.* at 1343. In *Rogers v. Goad,* 1987 OK 59, 739 P.2d 519, the policy was a single policy covering a fleet of vehicles. We held that an employee, being a Class 2 insured, is not permitted to stack UM coverage for each of the vehicles in the fleet. We declined to treat Class 1 and Class 2 insureds the same because to do so "would place upon the insurer a risk not contemplated by the contracting parties," *id.* at 522, and cited with approval *Cunningham v.*

*Insurance Co. of North America,* 213 Va. 72, 189 S.E.2d 832 (1972). In *Cunningham,* the Virginia Supreme Court said: "We remain committed to the practice that courts cannot substitute the name of each of the many employees of a given company in place of the employer as the named insured and thus stretch the coverage of the policy to include all employees and all members of their households. To do so would rewrite the contract of the parties and distort the public policy as set out in our cases." *Cunningham,* 189 S.E.2d at 835. Again in *Stanton v. American Mut. Liability Ins. Co.,* 1987 OK 118, 747 P.2d 945, we repeated the well-settled rule that employees, as Class 2 insureds, are entitled only to the coverage provided by the specific vehicle the employee was occupying when injured.

theory.[2] *Craig* certainly never deemed it appropriate to substitute a corporation's shareholders for the Class 1 named insured. However, while criticizing the dissent, *Craig* offered the following statement: "Even the most cursory reading of our cases makes it clear that employees of an insured are Class II insureds as a result of their status as *employees*, not as 'permissive users' as the dissent suggests." *Craig*, 771 P.2d at 216. The Bogdahns rely on this portion of the opinion for their proposition that when the named insured is a corporation we deemed it appropriate to substitute the corporation's shareholders as Class 1 insureds and the corporation's employees as Class 2 insureds.

¶ 19 The portion of the *Craig* opinion relied upon by the Bogdahns was offered in the context of the majority's response to the dissent's position. It is not integral to the holding in *Craig* and is mere *obiter dictum*. Moreover, it is contrary to the cases relied upon by *Craig* which make clear that an employee is entitled to UM coverage as a Class 2 insured solely by virtue of being an occupant or permissive user of a covered vehicle at the time of the accident. The *Craig* case offers no support for the Bogdahns' argument.

¶ 20 Next, the Bogdahns argue that we must find the policy ambiguous because this issue has been litigated throughout the United States with some jurisdictions finding an ambiguity and some finding no ambiguity. We reject the notion that because there is a split of authority we must find an ambiguity. The vast majority of jurisdictions conclude as a matter of law that similar policy language is not ambiguous: Arizona, Colorado, Florida, Georgia, Hawai'i, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, and Washington.[3] Only a small handful of jurisdictions

---

2. *Craig* impliedly rejected the corporeal entity theory. In its criticism of the dissent, the opinion used the language: "Even if we could accept the dissent's 'incorporeal entity' theory . . . ." and "To accept the dissent's view of incorporeal existence is to conclude, logically . . . ." *Craig*, 771 P.2d at 216.

3. *See, e.g., American States Ins. Co. v. C & G Contr., Inc.*, 186 Ariz. 421, 924 P.2d 111 (Ariz. App.1996); *Gardner v. Continental Western Ins. Co.*, 2000 WL 121302 (10th Cir.2000) (applying Colorado law); *Lampkin v. National Union Fire Ins. Co.*, 581 So.2d 175 (Fla.App.1990); *American States Ins. Co. v. Kelley*, 446 So.2d 1085 (Fla.App.1984); *Nicks v. Hartford Ins. Group*, 291 So.2d 673 (Fla.Dist.Ct.App.1974); *Bernard v. Nationwide Mut. Fire Ins. Co.*, 206 Ga.App. 519, 426 S.E.2d 29 (1992); *Hogan v. Mayor & Aldermen of Savannah*, 171 Ga.App. 671, 320 S.E.2d 555 (1984); *Foote v. Royal Ins. Co. of America*, 88 Hawai'i 122, 962 P.2d 1004 (Haw.App.1998); *Rohe v. CNA Ins. Co.*, 312 Ill.App.3d 123, 244 Ill.Dec. 442, 726 N.E.2d 38 (2000); *Economy Preferred Ins. Co. v. Jersey County Constr., Inc.*, 246 Ill.App.3d 387, 186 Ill.Dec. 233, 615 N.E.2d 1290, *cert. denied*, 152 Ill.2d 557, 190 Ill.Dec. 886, 622 N.E.2d 1203 (1993); *Peterson v. Universal Fire & Cas. Ins. Co.*, 572 N.E.2d 1309 (Ind. App.1991); *Huebner v. MSI Ins. Co.*, 506 N.W.2d 438 (Iowa 1993); *Sears v. Wilson*, 10 Kan.App.2d 494, 704 P.2d 389 (1985); *Adams v. Thomason*, 753 So.2d 416 (La.App.2000); *Marcello v. Moreau*, 672 So.2d 1104 (La.App.1996); *Bryant v. Protective Casualty Insurance Company*, 554 So.2d 177 (La.App.1989); *Meche v. Thibodeaux*, 550 So.2d 346 (La.App.1989), *cert. denied*, 558 So.2d 1124 (La.1990); *Barnes v. Thames*, 578 So.2d 1155 (La.App.1991); *Langer v. USF & G*, 552 A.2d 20 (Maine 1988); *Smith v. Reliance Nat'l Indem. Co.*, 2000 WL 1357523 (D.Me.2000); *Jacobs v. USF & G*, 417 Mass. 75, 627 N.E.2d 463 (1994); *Andrade v. Aetna Life & Cas. Co.*, 35 Mass.App.Ct. 175, 617 N.E.2d 1015 (1993), *review denied*, 416 Mass. 1105, 621 N.E.2d 685 (1993); *Michigan Township Participating Plan v. Pavolich*, 232 Mich.App. 378, 591 N.W.2d 325 (1999); *Kaysen v. Federal Ins. Co.*, 268 N.W.2d 920 (Minn.1978); *Lundgren v. Vigilant Ins. Co.*, 391 N.W.2d 542 (Minn.App.1986); *Ott v. Firemen's Fund Ins. Co.*, 936 S.W.2d 165 (Mo.App. 1996); *Cutter v. Maine Bonding & Cas. Co.*, 133 N.H. 569, 579 A.2d 804 (1990); *Benns v. Continental Cas. Co.*, 982 F.2d 461 (10th Cir.1993) (applying N.M. law); *Royal Ins. v. Bennett*, 226 A.D.2d 1074, 642 N.Y.S.2d 125 (N.Y.App.Div. 1996); *Buckner v. Motor Vehicle Accident Indem. Corp.*, 66 N.Y.2d 211, 495 N.Y.S.2d 952, 486 N.E.2d 810 (1985); *Sproles v. Greene*, 329 N.C. 603, 407 S.E.2d 497 (1991); *Busby v. Simmons*, 103 N.C.App. 592, 406 S.E.2d 628 (N.C.App. 1991); *Kitts v. Utica Nat'l Ins. Group*, 106 Ohio App.3d 692, 667 N.E.2d 30 (1995); *Meyer v. American Economy Ins. Co.*, 103 Or.App. 160, 796 P.2d 1223, *review denied*, 310 Or. 547, 800 P.2d 789 (1990); *Hunyady v. Aetna Life & Cas.*, 396 Pa.Super. 476, 578 A.2d 1312 (1990), *aff'd*, 530 Pa. 25, 606 A.2d 897 (1992); *Guarantee Ins. Co. v. Anderson*, 585 F.Supp. 408 (E.D.Pa.1984); *Concrete Services, Inc. v. USF & G*, 331 S.C. 506, 498 S.E.2d 865 (1998); *Dixon v. Gunter*, 636 S.W.2d 437 (Tenn.App.1982); *Grain Dealers Mutual Ins. Co. v. McKee*, 943 S.W.2d 455 (Tex. 1997); *General Ins. Co. of America v. Icelandic*

find the language ambiguous and allow coverage: Connecticut, Mississippi, Montana, New Jersey, Ohio, and Vermont.[4]

¶ 21 We agree with the vast majority of jurisdictions and reject the notion that the use of the term "family member" in a commercial automobile insurance policy renders the policy ambiguous.

## IV. CONCLUSION

¶ 22 We answer the rephrased first certified question as follows: The definition of an insured in the UM endorsement of the American Economy policy issued to Hillcrest Pharmacy, Inc. is not ambiguous and therefore the doctrine of reasonable expectations cannot be applied to define Blake Bogdahn as an insured. Because of our answer to the rephrased first questions, it is unnecessary for us to answer the rephrased second question.

**REPHRASED CERTIFIED QUESTION ANSWERED.**

WATT, C.J., HODGES, LAVENDER, KAUGER, BOUDREAU, WINCHESTER, EDMONDSON, JJ., concur.

OPALA, V.C.J., concurs in result.

HARGRAVE, J., dissents.

OPALA, V.C.J., concurring in result.

¶ 1 In conformity to the Revised Uniform Certification of Questions of Law Act,[1] the United States Court of Appeals for the Tenth Circuit (certifying court) submitted the following question:

Whether Blake Bogdahn was a person insured under the uninsured motorist [UM] provisions of the American Economy policy issued to Hillcrest Pharmacy as the named insured?

The court today **reformulates** the question by **dividing it into two parts:**[2]

Is the definition of an insured in the UM endorsement of the American Economy policy issued to Hillcrest Pharmacy, Inc. **ambiguous,** such that the doctrine of reasonable expectations can be applied to define Blake Bogdahn as an insured?

If so, does the statutorily mandated UM selection/rejection form create a reasonable expectation of coverage for Blake Bogdahn, such that the policy must be reformed to provide such coverage?

Because the **first part** of the reformulated question is answered in the negative, the court deems it unnecessary to answer the **second part** of the question it poses for an answer.

¶ 2 Although I **accede** to the court's conclusion that Bogdahn's son is not an insured under the UM endorsement, I **recede** from today's unwarranted *sua sponte* repetition of the Western District's original search for facial policy ambiguities. This court was not asked, either **explicitly or implicitly, directly or obliquely, to reexamine that issue by reploughing the same field.** Even though I do not dispute the soundness of the court's legal counsel, **I would not intrude on any aspect of the case left unopened for state-court invasion by the federal certification**

---

*Builders, Inc.,* 24 Wash.App. 656, 604 P.2d 966 (1979).

4. *See, e.g., Agosto v. Aetna Cas. & Surety Co.,* 239 Conn. 549, 687 A.2d 1267 (1996); *Hansen v. Ohio Cas. Ins. Co.,* 239 Conn. 537, 687 A.2d 1262 (1996); *Ceci v. National Indem. Co.,* 225 Conn. 165, 622 A.2d 545 (1993); *Nationwide Mut. Ins. Co. v. Barre,* 1996 WL 745842 (Conn.Super.1996); *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.,* 723 So.2d 550 (Miss.1998); *Hager v. American West Ins. Co.,* 732 F.Supp. 1072 (D.Mont.1989); *Progressive Cas. Ins. Co. v. Hurley,* 166 N.J. 260, 765 A.2d 195 (2001); *Lunge v. National Cas. Co.,* 977 F.Supp. 672 (D.Vt.1997).
 Some jurisdictions and treatises include *O'Hanlon v. Hartford Acc. & Indem. Co.,* 639 F.2d 1019 (3rd Cir.1981) (applying Delaware law) among this group. However, *O'Hanlon* is not on point because the named insured was an individual's trade name, not a corporation. Some include *Hartford Acc. & Indem. Co. v. Huddleston,* 514 S.W.2d 676 (Ky.1974). It is not on point because the named insured was a partnership and the case was decided based on partnership law, not policy language ambiguity. Some include *American Fire & Cas. Co. v. Sinz,* 487 So.2d 340 (Fla.Dist.Ct.App.1986). It is not on point because the injured person was a relative resident of an additional designated named insured. Finally, many include *Hawkeye–Security Ins. Co. v. Lambrecht .& Sons, Inc.,* 852 P.2d 1317 (Colo.App.1993). However, this case was distinguished and limited to its unusual facts in *Gardner v. Continental Western Ins. Co.,* 2000 WL 121302 (10th Cir.2000) (applying Colorado law).

1. 20 O.S.2001 § 1601 *et seq.*

2. Reformulation of a certified question is authorized by 20 O.S.2001 § 1602.1.

order. The Tenth–Circuit jurisprudence strongly militates against today's gratuitous enlargement.

# I

## CRITICAL FEDERAL LITIGATION HISTORY

¶ 3 Hillcrest Pharmacy, Inc. (Hillcrest Pharmacy), a corporation, owned a commercial automobile policy issued by American Economy Insurance Company (American Economy or insurer). Blake Bogdahn, the minor son of the pharmacy's owners, Steve and Bana Bogdahn (collectively called Bogdahn or shareholder), was seriously injured when he fell off the back of an all-terrain vehicle (ATV) while it was then driven by a friend, also a minor. The ATV was owned by the friend's parents and was apparently uninsured. Hillcrest Pharmacy's insurer, who had sought a declaration of its liability from the U.S. District Court for the Western District of Oklahoma, denied coverage (for Blake's injuries) under the uninsured motorist (UM) provisions of the policy issued to the pharmacy, taking the position that the ATV was not a covered vehicle under the policy and that Blake was not an "insured" within the meaning of the policy's UM provisions. Insurer sought summary judgment, arguing that (a) Hillcrest's policy provides no UM coverage for Blake's injuries and (b) there is neither any basis for contract reformation nor any ground for constructive fraud or negligence which would require that UM coverage be provided. Giving summary judgment to the insurer, the district court concluded (a) **the policy is clear and unambiguous,** (b) the term in the UM endorse-

ment which implicates "family members" was not triggered because the named insured is a corporation, (c) Blake Bogdahn is not an "insured" under the UM provisions of the policy and (d) there is no basis under Oklahoma-law for invoking the reasonable expectations doctrine to reform the policy. Bogdahn appealed.

¶ 4 Finding no controlling Oklahoma precedent on the question tendered—whether Blake Bogdahn, a resident member of the shareholder's family, is covered under the UM provisions of a policy issued to a corporation—the federal appellate court issued a certification order. In its text the appellate court invites our attention to some authorities in other states and requests that we search for an appropriate Oklahoma-law norm that governs the certified issue.

# II

## WHETHER THE FEDERAL TRIAL JUDGE ERRED IN DECLARING THE POLICY'S TERMS ARE UNAMBIGUOUS—AN ISSUE OF SUBSTANTIVE STATE LAW—WAS NOT INCLUDED FOR OUR RE–EXAMINATION IN THE CERTIFIED QUESTION

### A.

### *Tenth–Circuit Jurisprudence Governs the Parameters Of This Court's Statutory Reformulation Power*

¶ 5 While this court has statutory state authority to reformulate a question of law certified to it by the federal court,[3] the breadth of that authority is controlled by extant, effective and unwithdrawn Tenth–Circuit jurisprudence. *Shebester v. Triple Crown Insurers*[4] **teaches that uninvited state-court intrusion into pending federal decision-making process will meet with rejection.**[5] Until there is an *en banc* pro-

---

3. 20 O.S.2001 § 1602.1.

4. 974 F.2d 135, 139 n. 3 (10th Cir.1992).

5. In *Shebester* a **panel of the Tenth–Circuit** held that a statement added by the Oklahoma Supreme Court in an answer to a certified question was not binding on the appellate court since the precise "question was not certified ... and it is unclear whether the Oklahoma court had an adequate record to make this determination." Although **another Tenth–Circuit panel** in an **unpublished opinion** has recently acknowledged this court's statutory reformulation freedom, **I**

would not accept its pronouncement as repudiating *Shebester's* **restrictive approach.** *Local 514 Transport Workers Union of America v. Keating,* 66 Fed.Appx. 768, 2003 WL 2007934 (10th Cir.2003)(unpublished opinion). "Our statement of the questions is not meant to limit the Oklahoma Supreme Court's inquiry. We acknowledge the Oklahoma Supreme Court's reserved authority to reformulate legal questions presented through the certification procedure. See Okla. Stat. tit. 20, §§ 1602.1, 1604(A)(3)." *Id.*

nouncement which accepts the broad reformulation freedom that has long been recognized by other circuit courts,[6] by the uniform certification act,[7] by treatises [8] and by commentators,[9] **I would not ignore Shebester's teachings on the restrictive sweep of reformulation.**[10] When there is doubt whether the certifying court intended to pose a much broader question than that which stands formulated, the better procedure appears to be either (a) to reformulate the question posed **subject to** the federal court's approval or (b) to request that the federal court submit an amended question.[11]

6. *Barnes v. Atlantic & Pac. Life Ins. Co. of America,* 530 F.2d 98, 99 (5th Cir.1976) ("Five questions were certified, but, following our usual practice, we left it to the Alabama Court to formulate the issues. As was their prerogative, the Alabama Court did just that and considered the basic issues rather than replying categorically to the certified questions."); *Kunz v. Utah Power & Light Co.,* 871 F.2d 85, 88 (9th Cir.1989) ("Our phrasing of the questions should not restrict the court's consideration of the problems and issues involved. The court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties.' "); *Meckert v. Transamerica Ins. Co.,* 742 F.2d 505, 507 (9th Cir.1984) ("We do not intend this formulation to be exclusive. The Idaho Court is free to frame the basic issues in any appropriate manner."); *Todd v. Societe BIC, S.A.,* 9 F.3d 1216, 1222 (7th Cir.1993)(If, following certification of products liability issues the Illinois Supreme Court "will conclude that these are not the right questions ... the Justices should feel free to reformulate the questions, just as they would when dealing with the issues posed in a petition for leave to appeal."); *Tarr v. Manchester Ins. Corp.,* 544 F.2d 14 (1st Cir.1976) (the state court's answer to a question not certified proved dispositive); *Engel v. CBS, Inc.,* 182 F.3d 124, 125, 126 (2nd Cir.1999).

7. The comment to the Uniform Certification of Questions of Law Act § 4, 12 U.L.A. 74 (1995), describes the parameters of the state court's reformulation authority:

Requiring a question to be answered precisely as it is certified imposes a counterproductive rigidity that could decrease the utility of the answer received. Permitting the receiving court to amend the certified question freely may also adversely affect the utility of the answer and result in the issuance of an advisory opinion. The **term "reformulate"** is intended to connote a retention of the specific terms and concepts of the question **while allowing some flexibility in restating the question in light of the justiciable controversy pending before the certifying court.**
(emphasis added).

8. In 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4248 (2d ed.1988), the authors observe:
[I]t is now the **common practice of many courts,** when certifying, to **emphasize** that the particular phrasing used in the certified **question is not to restrict the state court and that** the state court is free to reformulate the questions as it sees fit. State courts have availed themselves of this freedom whether or not it is expressly stated in the certificate.
(emphasis added; footnotes omitted).

9. In *Interjurisdictional Certification and Choice of Law,* 41 Vanderbilt L.Rev. 411, 426 (1988), the authors, John B. Corr and Ira P. Robbins, state:

Regardless of the clarity of the record, facts, and issues certified, the answering court must have the power to reformulate the questions posed. Although the court should not answer questions unrelated to the case at hand, the answering court should have the same freedom to analyze the factual circumstances that it would have if the entire case were before the court. Indeed, the ability of the answering court to reshape or add to the issues is necessary to further the goals of certification. The answering court may be best situated to frame the question for precedential value and to control the development of its laws. If state courts take offense at a poorly framed question, they may miss a genuine opportunity to settle state law on a particular point.

10. From the states' vantage point, the uniform certification act is critical to the faithful practice of rudimentary federalism. It respects the state's autonomy to declare the norms of state law—constitutional, statutory and unwritten—to be applied in pending federal-court litigation. *See* Bradford R. Clark, *Ascertaining the Laws of the Several States: Positivism and Judicial Federalism After Erie,* 145 U. Pa. L.Rev. 1459, 1550 (1997) ("Certification is perhaps uniquely suited to further the principles of judicial federalism underlying the Supreme Court's decision in Erie."). The vehicle's smooth operation enhances the continued recognition of state laws and should not be abused by offering uninvited and objectionable responses.

11. In *Western Helicopter Services, Inc. v. Rogerson Aircraft Corp.,* 311 Or. 361, 811 P.2d 627, 633–34 (1991), the Oregon court observes that the discretion to reframe questions certified by the federal court "should be exercised with reserve, ordinarily after consultation with the certifying court, and for the primary purpose of facilitating a resolution of the actual question of law posed by the case in which certification is sought." The court notes that it followed this course in the case before it. *Id.*

## B.

### Facial Ambiguity, Which Presents A Question of Substantive State Law, Is Not Encompassed Within the Certified Question

¶ 6 By concluding the policy is facially unambiguous and rejecting parol evidence as a permissible tool of construing the insurance contract in light of the parties' intent, the Western District determined an **issue of substantive state law.**[12] Oklahoma and federal jurisprudence both recognize that the common law's parol evidence rule [13] is a part of the pertinent state legal system's substantive law [14] rather than a mere rule of evidence.[15] Because the policy's ambiguity—an issue of substantive state law—was available for certification, its omission from the Tenth–Circuit order's text must be regarded as significant and cannot be cavalierly ignored.

¶ 7 In the absence of a direct or oblique invitation to so do, **I would neither repeat nor re-examine here the federal trial court's earlier in-vain search for ambiguities.** They were there found totally absent and **we have not been invited**—implicitly or explicitly—**to re-decide that state-law issue by reploughing the same field.**[16] I would

12. By force of the parol evidence rule pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of an executed writing. 15 O.S.2001 § 137; *Bonner v. Oklahoma Rock Corp.*, 1993 OK 131, 863 P.2d 1176, 1180; Restatement (Second) of Contracts § 213 (1979). Parol evidence cannot vary, modify or contradict the terms of an executed written agreement. *Pitco Production Co. v. Chaparral Energy, Inc.*, 2003 OK 5, ¶ 14, 63 P.3d 541, 546; *Ollie v. Rainbolt*, 1983 OK 79, 669 P.2d 275, 279; *Snow v. Winn*, 1980 OK 27, ¶ 12, 607 P.2d 678, 682; Jeffery W. Stempel, LAW OF INSURANCE CONTRACT DISPUTES, ¶ 4.02 (2d ed.1999)(the parol evidence rule provides that where there exists a fully integrated written contract, the court will ordinarily not consider extrinsic evidence of the parties' intent or the meaning of a particular term).

13. The provisions of 15 O.S.2001 § 137 **are declaratory of pre-existing common law.** *Henry v. Hope*, 1957 OK 235, ¶ 5, 317 P.2d 239, 241; *Warren v. Pulley*, 1943 OK 248, ¶ 6, 141 P.2d 288, 290.

14. *Pitco, supra* note 12, at ¶ 14, at 546; *First Nat. Bank in Durant v. Honey Creek Entertainment Corp.*, 2002 OK 11, ¶ 10, 54 P.3d 100, 103; *Snow, supra* note 12, at ¶ 12, at 682; *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 245 (1st Cir.1985) ("[I]t is well recognized that Congress did not intend the [Federal Rules of Evidence] to preempt so-called 'substantive' state rules of evidence such as the parole [sic] evidence rule"); *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir.1998); see also Restatement (Second) of Contracts § 213, comment a (1979). **Because the policy's ambiguity was a certifiable state-law issue, its omission from the certification may not be rejected out-of-hand as without significance.**

15. Parol evidence is not a **rule of evidence** for the resolution of which the federal courts may use federal evidence law. State-court intrusion into federal adjective-law process would not offer a binding resolution of an unsettled issue but mere gratuitous advice. On the other hand, a state court's response to a state-law question becomes binding on the federal court for application in deciding the case for which the question was submitted. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981); *Salve Regina College v. Russell*, 499 U.S. 225, 226–27, 231–34, 111 S.Ct. 1217, 1218–19, 1221–23, 113 L.Ed.2d 190 (1991).

16. The court's opinion (at ¶ 6) does not accurately render the gist of the certifying court's range of concerns to be resolved. After **narrowly stating** the formulated issue, the Tenth Circuit, in the latter portion of its order, directs this court's attention to authorities in other states. Its certification order states as follows:

On the very question before us, there are competing views as to the inclusion of a corporation as a named insured. There is also a considerable body of case law addressing the ambiguity of listing a family-owned corporation as the named insured, with the concurrent inclusion of family members in a commercial policy. Thus, the Oklahoma Supreme Court, has never squarely ruled on the issue presented.

(citations omitted).
The **first part** of the reformulated question is **much broader** than the certified question, and the **second part** is **utterly erroneous.** This is so because the court perceives that it has been called upon to determine whether the statutorily mandated UM selection/rejection form created a reasonable expectation of coverage which would justify the policy's reformation, **although** nowhere in the certification order is there any mention of evidentiary material tendered in summary process, let alone an invitation to consider it in support of the insured's reformation quest should an ambiguity be found on the face of the policy. **Solely in the parties' briefs is there an argument that raises the issue.** There is no basis in extant Tenth–Circuit jurisprudence for reformulating issues based on the parties' arguments. **Until the federal appellate court adopts an approach similar to that of the Ninth Circuit** (see

hence assume the policy is unambiguous and confine myself to determining, on a four-corners examination, whether the child's parents may be considered to stand in the status of an insured under the policy issued to a corporate entity.[17] **The policy's language is the only legitimate evidence of what the parties intended.**[18]

### C.

### *The Policy's UM Endorsement Does Not Include Coverage for Members of the Shareholder's Family*

¶ 8 I would, as the court does today, declare Oklahoma law to be that Blake Bogdahn, a resident family member of the in-sured corporation's sole shareholder, cannot stand in the status of an insured within any of the classifications of "who is an insured" entitled to coverage under the terms of the UM endorsement in the policy issued to a corporate entity as a named insured.[19]

¶ 9 Hillcrest Pharmacy is the only named insured listed on the policy's declaration page. Bogdahn's position as the corporation's sole shareholder does not confer on him a status equal to that of the insured company.[20] Hillcrest Pharmacy is a distinct legal entity, separate and apart from Bogdahn. Shareholders are not listed anywhere on Hillcrest Pharmacy's policy. No reasonable interpretation of the policy's terms

cases *supra* note 6), **we should stand confined to the formulated question.**

17. The votes of two Tenth–Circuit panel members lend support to my view that there was no broader certification than that contained in the **federal court's narrow formulation**—a call for a four-corners examination of the policy with a view to determining whether, as a matter of state law, the policy entitles the shareholder's family members to press their UM loss. The vote of the other two panel members appears as follows:

"Hartz, J., concurs **as to** the certification of the question of state law.
Briscoe, J., dissenting.
I would not certify the question presented because the policy language at issue unambiguously outlines who is entitled to UIM coverage."

18. In testing an unambiguous insurance policy this court must focus solely upon the agreement's terms rather than on any extrinsic evidence. *Pitco, supra* note 12, at ¶ 14, at 546; *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority*, 1994 OK 20, ¶ 27, 896 P.2d 503, 514, *cert. denied*, 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995); *Hicks v. Mid–Kansas Oil & Gas Co.*, 1938 OK 84, ¶ 0, syl., 182 Okl. 61, 76 P.2d 269, 269 ("The meaning of a contract is to be ascertained from the writing alone, if possible, the duty of the court being to declare the meaning of what is written in the instrument, not what was intended to be written."). Absent an ambiguity, insurance policies are generally subject to the same rules of construction as other contracts. *Carraco Oil Co. v. Mid–Continent Cas. Co.*, 1971 OK 50, ¶ 8, 484 P.2d 519, 521; *C.P.A. Co. v. Jones*, 1953 OK 345, ¶¶ 26–27, 263 P.2d 731, 734.

19. The policy's UM endorsement states in pertinent part:

B. **WHO IS AN INSURED**
1. **You.**
2. **If you are an individual, any "family member."**

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
(emphasis added).
The UM endorsement provides four categories of insureds with UM coverage. The first two categories—"you" and "family members"—are deemed "class I insureds" entitled to UM coverage when injured by an uninsured motorist. "Class 2 insureds" are usually those individuals insured by the policy only by reason of their occupancy or permissive use of a covered vehicle. In order for a shareholder's family member to stand in the status of an insured, that person must fall within one of named classes. *Rogers v. Goad*, 1987 OK 59, ¶ 5, 739 P.2d 519, 521.
The policy's UM provisions extend coverage to family members only if the named insured is an individual. The policy defines a family member as "a person related to you by blood, marriage or adoption who is resident of your household, including a ward or foster child." Because the insured named on the policy issued to Hillcrest Pharmacy is not an individual, the coverage term implicating family members is not triggered. Under the UM endorsement Bogdahn's son clearly does not qualify as a "family member." In the absence of a UM clause expressly extending coverage to the shareholder's family members, the latter would only be covered when occupying a vehicle insured by the policy.

20. Oklahoma law treats a corporation as a legal entity separate and distinct from its shareholders. 18 O.S.2001 § 1016; 16 O.S.2001 § 1; *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, ¶ 10, 894 P.2d 1077, 1080; *Sautbine v. Keller*, 1966 OK 209, ¶ 15, 423 P.2d 447, 451 (a family corporation is a legal entity separate and distinct from its shareholders).

would construe the shareholder's status to be the same as that of the insured corporation entitled to UM indemnity.

¶ 10 Bogdahn claims that a construction adverse to his contention will render meaningless the UM coverage for a policy issued exclusively to a corporation.[21] This is so because a corporation cannot occupy an automobile, sustain bodily injury or operate a motor vehicle. The decision that the UM endorsement will not, in this cause, produce coverage for Bogdahn's son does not render the corporate policy ineffectual. The purpose of a UM provision is to protect the insured from the effects of personal injury sustained in an accident with another motorist who either carries no insurance or has inadequate coverage.[22] In a policy issued to a corporation, the UM endorsement would provide coverage for occupants whose injuries were sustained while they were in an insured vehicle.

¶ 11 Dubious as I am that extant Tenth–Circuit jurisprudence will allow today's broad reformulation of the question posed for our answer, I would assume the correctness of the trial judge's conclusion—that the policy is not facially ambiguous—and would view the certification not as a license to search once again for facial policy ambiguities **but rather as calling for our response** to whether the shareholder's son may stand in the status of an insured.

### III

### SUMMARY

¶ 12 Tenth–Circuit jurisprudence commands that our answers be confined within the range of questions posed. It is not this court's office to intrude (by its responses) upon the certifying court's decision-making process. The question certified to us does not allow this court's re-examination of the federal trial judge's legal conclusion that, when measured by the norms of state law, the policy's provisions are facially unambiguous. Today's reploughing of the field that was earlier visited by the Western District in its own search for ambiguities—absent a direct or oblique invitation to do so—is but an unwarranted assumption of reviewing power neither encompassed in the certification order's text nor tolerated by Tenth–Circuit jurisprudence.

¶ 13 In answer to the question certified I would hence assume that the policy is facially unambiguous (as the federal trial judge had concluded) and, upon a four-corners examination of the contract, declare that Oklahoma law will not allow the shareholder's resident family member to stand in the status of an insured under the terms of the UM endorsement in a policy issued to a corporation.

**21.** For this proposition Bogdahn directs us to *Lunge v. National Cas. Co.,* 977 F.Supp. 672, 677 (D.Vt.1997); *Hansen v. Ohio Cas. Ins. Co.,* 239 Conn. 537, 687 A.2d 1262, 1267 (1996); *J & W Foods Corp. v. State Farm Mutual Auto. Ins. Co.,* 723 So.2d 550 (Miss.1998); *O'Hanlon v. Hartford Acc. and Indem. Co.,* 639 F.2d 1019 (3rd Cir. 1981); *Progressive Cas. Ins. Co. v. Hurley,* 166 N.J. 260, 765 A.2d 195, 203–05 (2001); *Ezawa v. Yasuda Fire & Marine Ins. Co. Of America,* 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999).

**22.** *Uptegraft v. Home Ins. Co.,* 1983 OK 41, ¶ 6, 662 P.2d 681, 683–684.