HENRY, J.,
joined by MURPHY, J., concurring.
I agree with the result reached by the majority but write separately to note my serious concerns about the controlling case, Gillogly v. General Electric Capital Assurance Corp, 430 F.3d 1284 (10th Cir.2005). I also have more general concerns about the interpretation of insurance policies purporting to provide coverage for nursing care.
As the majority observes, this court held in Gillogly that an insurance policy with language identical to Ms. Milburn’s did not provide coverage for a policyholder’s stay in a residential care home because that facility was not “licensed by the appropriate licensing agency to engage primarily in providing nursing care and related services to inpatients.” 430 F.3d at 1286. In my view, the reliance on this policy language is highly troubling for several reasons.
First, by directing the policyholder to state licensing schemes that may well change between the time that the policy is purchased and the time that the policyholder moves to the facility and seeks benefits, the policy language presents a moving target. For example, in Gillogly, we examined the licensing statutes in effect in 2001 “[a]t the time that [the policyholder] submitted his request for benefits,” 430 F.3d at 1291, despite the fact that the policy had been purchased in 1989. See id. at 1286. This time lag may present insurmountable hurdles for a policyholder, who in light of Gillogly must apparently anticipate how the state’s licensing framework will apply to the facility in which she will be living at some uncertain date in the future. To me, the imposition of such a burden is inconsistent with Oklahoma’s established rule that we construe the policy “from the standpoint of a reasonably prudent lay person.” Am. Econ. Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla.2004) (internal quotation marks omitted).
Second, even if they do not change, licensing schemes for nursing care facilities may be quite complicated. In my view, it makes sense to use a state license as a floor rather than a ceiling. In other words, I think that a reasonable policyholder can understand that he is purchasing coverage for a facility that holds some kind of valid medical facility license. But to expect her to understand and then predict what particular license the facility will hold may be too much, particularly if the policy uses ambiguous terms like “nursing care and related services” and the licensing scheme creates different licenses for “nursing homes,” “assisted living centers,” “residential care homes,” and other similar facilities.
Third, as medical technology continues to develop, I suspect that the task of predicting the kind of facility where she will live will become even harder for the typical policyholder. The level of care that once could be provided only in a nursing home may well be provided in a less comprehensive facility with a different license and fewer medical personnel on staff. Again, to rely on a policy’s general reference to a licensing scheme to define the scope of coverage seems likely to thwart the reasonable expectations of the policyholder.
*1293 I also note that, even though Gillogly is controlling, this is a closer case. The facility where Ms. Milburn resides is licensed as an assisted living center, not a residential care home. Unlike the licensing provision at issue in Gillogly, The Continuum of Care and Assisted Living Act (the licensing provision regarding assisted living centers), Okla. Stat. tit. 63 § 1-890.1 to 890.7, expressly refers to nursing care. Under that act, “assisted living center” means:
any home or establishment offering, coordinating or providing services to two or more persons who:
a. are domiciled therein,
b. are unrelated to the operator,
c. by choice or functional impairments, need assistance with personal care or nursing supervision,
d. may need intermittent or unscheduled nursing care,
e. may need medication assistance, and
f. may need assistance with transfer and/or ambulation
Oiíla. Stat. tit. 63 § 1-890.2 (emphasis added).
Importantly, the care encompassed by the phrase “intermittent or unscheduled nursing care” is not as limited as one might think. Accompanying regulations regarding assisted living centers define “intermittent or unscheduled nursing care” as “skilled nursing care given by a licensed practical nurse or registered nurse that is not required twenty-four (24) hours a day.” See Okla. Ajdmin. Code § 310:663-1-2. The fact that an assisted living center is authorized to provide “skilled nursing care” for eight, ten, or twelve hours a day (but not twenty-four) provides some support for Ms. Milburn’s reading of the policy-
Nevertheless, I agree with the majority that our ruling in Gillogly directs us, regardless of my concerns about it, to interpret the policy term “licensed by the appropriate licensing agency to engage primarily in providing nursing care and related services to inpatients” to apply only institutions licensed as “nursing facilities” under Oklahoma law. Maj. Op. at 1289-90. The facility in which Ms. Milburn resides does not hold such a license.
Even though Ms. Milburn does not have coverage, I urge the defendant insurer here, as well as other insurers, to provide clearer definitions of the crucial terms. Further, I hope that Oklahoma policymakers in this field, including the legislature, the Insurance Commissioner, and the Department of Health, will take a close look at efforts to add simple clarity to this important area of law. The fact that a distinguished district court judge read the policy in the same way as Ms. Milburn suggests to me that some corrective action is necessary to protect policyholders’ reasonable expectations.